**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| **ELSI MUNOZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:08-CV-071-C** |
| | § | **ECF** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | **Referred to the United States** |
| **Defendant.** | § | **Magistrate Judge** |

**REPORT AND RECOMMENDATION**

**THIS CASE** is before the court upon Plaintiff's complaint filed October 22, 2008, for

judicial review of the administrative decision of the Commissioner of Social Security denying

Plaintiff's applications for disability insurance benefits under Title II of the Social Security Act. On

October 23, 2008, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this

case to the United States magistrate judge for all further proceedings. Plaintiff filed a brief in

support of her complaint on March 7, 2009, and Defendant filed a brief on April 2, 2009. This court

has considered the pleadings, the briefs, and the administrative record and recommends that the

United States district judge reverse the Commissioner's decision and remand this case for further

administrative proceedings.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for disability insurance benefits on April 2, 2001, alleging

disability beginning May 31, 2000. Tr. 12. Plaintiff's applications were denied initially and upon

reconsideration. Tr. 12, 402-05, 407-11. Plaintiff filed a Request for Hearing by Administrative

Law Judge on January 15, 2002, and this case came for hearing before the Administrative Law Judge

("ALJ") on October 22, 2002.  Tr. 12, 28-55, 400.  Plaintiff, represented by a non-attorney, testified

in her own behalf.  Tr. 31-51.  Carol Bennett, a vocational expert ("VE"), appeared and testified as

well.  Tr. 51-54.  The ALJ issued a decision unfavorable to Plaintiff on December 13, 2002.  Tr. 10-
26.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a

disability within the meaning of the Social Security Act.  He found that Plaintiff met the disability

insured status requirements through December 31, 2005, and that Plaintiff had not engaged in

substantial gainful activity at any time since May 31, 2000.  Tr. 12-13, 25.  Plaintiff has "severe"

impairments, including rheumatoid arthritis, a history of bilateral carpal tunnel syndrome and

residuals status-post bilateral carpal tunnel releases, a cervical thoracic strain, hypertension, a history

of urinary frequency, major depression, a mathematics disorder, borderline intellectual functioning,

and a general anxiety disorder.  Tr. 13, 25.  Plaintiff's severe impairments, singularly or in

combination, were not severe enough to meet or equal in severity any impairment listed in the

Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required

to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past

relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms,

including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social

Security Ruling 96-7p.  Tr. 14.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning

her impairments and their impact on her ability to work were not entirely credible.  Tr. 25.

The ALJ found that Plaintiff could not return to her past relevant work as a production line worker. Tr. 23, 25. He noted that Plaintiff was considered a "younger individual" with a marginal education. 20 C.F.R. §§ 416.963, 416.964; Tr. 24-25.

The ALJ found that Plaintiff retained the RFC to perform the requirements of light work activity, with the following limitations: only occasionally performing repetitive fine fingering motions with her bilateral hands and wrists and jobs with a reasoning development level of 1-3. Tr. 25. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 24-26. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of inspector, with 7,000 jobs in Texas and 113,000 jobs nationally; machine tender, with 4,000 jobs in Texas and 80,000 jobs nationally; and hand packer, with 5,000 jobs in Texas and 75,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 25-26.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 20, 2003. Tr. 8-9. The Appeals Council denied Plaintiff's request and issued its opinion on June 20, 2003, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 7, 2005, the district court remanded this case for further proceedings, and on April 15, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. The ALJ held a supplemental hearing on September 6, 2006. Tr. 432, 488-506, 545-46, 572-74, 807-32. Plaintiff, represented by a non-attorney, again testified in her own behalf. Tr.

811-27.  Carol Bennett, a vocational expert ("VE"), appeared and testified as well.  Tr. 828-31.  The

ALJ again issued a decision unfavorable to Plaintiff on January 26, 2007.  Tr. 429-53.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a

disability within the meaning of the Social Security Act.  He found that Plaintiff met the disability

insured status requirements through December 31, 2005, only, and that Plaintiff had not engaged in

substantial gainful activity at any time since May 31, 2000.  Tr. 433.  Plaintiff has "severe"

impairments, including rheumatoid arthritis, a history of bilateral carpal tunnel syndrome and

residuals status-post bilateral carpal tunnel releases, a cervical thoracic strain, hypertension, a history

of urinary frequency, major depression, a mathematics disorder, borderline intellectual functioning,

and a general anxiety disorder.  Tr. 434.  Plaintiff's severe impairments, singularly or in

combination, were not severe enough to meet or equal in severity any impairment listed in the

Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id*.  Therefore, the ALJ was required

to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past

relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms,

including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social

Security Ruling 96-7p.  Tr. 440.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning

her impairments and their impact on her ability to work were not entirely credible.  Tr. 435.

The ALJ found that Plaintiff could not return to her past relevant work as a production line

worker.  Tr. 451.  He noted that Plaintiff was considered a "younger individual" with a marginal

education.  20 C.F.R. §§ 416.963, 416.964; Tr. 451.

The ALJ found that Plaintiff retained the RFC to perform the requirements of light work activity, with the following limitations: lifting/carrying 20 pounds occasionally and 10 pounds frequently; sitting/standing/walking, individually or in combination throughout an 8-hour workday; only occasionally performing repetitive fine fingering motions with her bilateral hands and wrists; and performing jobs with a reasoning development level of 1-3. Tr. 434. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 451-52. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of inspector, with 4,000 jobs in Texas and 45,000 jobs nationally; machine tender, with 3,000 jobs in Texas and 50,000 jobs nationally; and hand packer, with 8,000 jobs in Texas and 150,000 jobs nationally. *Id.* The ALJ, therefore, again concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 452-53.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 10, 2007. Tr. 541-42. The Appeals Council denied Plaintiff's request and issued its opinion on September 11, 2008, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 426-27. The ALJ's decision, therefore, became the final decision of the Commissioner.

On October 22, 2008, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is

limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 452-53.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to properly consider the medical opinions of record and failed to appropriately consider Plaintiff's testimony.  Plaintiff also alleges that the ALJ failed to consider the entire insured period in evaluating the Plaintiff's disability, failed to include all of the

limitations imposed by Plaintiff's impairments into the hypothetical question posed to the VE, and

erred by relying upon the opinion of the VE in finding that Plaintiff could perform alternative work

where such testimony conflicted with the *Dictionary of Occupational Titles*. The ultimate issue is

whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review

the record to determine whether it "yields such evidence as would allow a reasonable mind to accept

the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

A.      **Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence

in the record because the ALJ erred by failing to appropriately consider the opinions of Plaintiff's

treating physicians and the medical evidence as a whole.

The opinion of a treating physician who is familiar with the claimant's impairments,

treatments, and responses should be accorded great weight in determining disability. A treating

physician's opinion on the nature and severity of a patient's impairment will be given controlling

weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R.

§ 404.1527(d)(2).  On the other hand,  "[g]ood cause may permit an ALJ to discount the weight of

a treating physician relative to other experts where the treating physician's evidence is conclusory,

is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise

unsupported by the evidence."  *Newton*, 209 F.3d at 456.

Unless the Commissioner gives a treating source's opinion controlling weight, the

Commissioner will consider six factors in deciding the weight to give to any medical opinion.  20

C.F.R. § 404.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each

of the [six] factors before declining to give any weight to the opinions of the claimant's treating

specialist." 209 F.3d at 456.[1]  Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and

20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and

severity of an individual's impairment(s) and are the only opinions that may be entitled to

controlling weight.  The requirement that the ALJ discuss the six factors set forth in *Newton* and 20

C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements

that a claimant is disabled.  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  The opinion of

a treating source is generally given more weight than a non-examining source.   20 C.F.R.

§ 404.1527(d)(1).

Good cause to disregard the opinions of a treating physician is found where such opinions

"are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic

techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.

2001).  SSR 96-2p provides that a medical source statement from a treating source which is well-

supported by medically acceptable evidence and which is not inconsistent with other substantial

evidence in the record is entitled to controlling weight. *See* SSR 96-2p.  This ruling further explains:

> It is an error to give an opinion controlling weight simply because it is the opinion
> of a treating source if it is not well-supported by medically acceptable clinical and
> laboratory diagnostic techniques or if it is inconsistent with the other substantial
> evidence in the case record.

*Id.*  The ALJ may also reject a treating physician's opinion if he finds, with support in the record,

that the physician is not credible and is "leaning over backwards to support the application for

---

[1]      In unpublished decisions the Fifth Circuit has noted that the ALJ need not consider
these six factors when there is competing first-hand medical evidence and where the ALJ finds that
one doctor's opinion is more well-supported than that of another treating or examining physician.
*See*, *e.g., Ward v. Barnhart*, 192 Fed. Appx. 305, 308 (5th Cir. 2006); *Walker v. Barnhart*, 158 Fed.
Appx. 534 (5th Cir. 2005).  However, this is not a case involving competing first-hand medical
evidence.

disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. Tex. 1995) (internal citations and quotation omitted). "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.*

The record indicates that while Dr. James Yost's opinions evolved, regarding the progress and effects of Plaintiff's impairments, his treatment notes generally support such opinions. In various letters and progress notes, Dr. Yost noted that Plaintiff's disease process was exacerbated by the repetitive use of her hands, was related to work, and was not in complete remission. Tr. 174-76. Although Plaintiff experienced periods of feeling "pretty well" or of feeling better overall, treatment notes nevertheless indicate that Plaintiff did experience trace swelling and tenderness at the MCPs, wrists, knees, and feet. Tr. 167, 169-70, 172-73. A progress note dated June 15, 2000, indicated that Plaintiff was doing fairly well and was relatively stable as long as she did not engage in much activity. Tr. 166. Dr. Yost noted that with any physical activity of the upper and lower extremities, Plaintiff would start to have problems with swelling, pain, and stiffness. *Id.* On July 6, 2000, Dr. Yost noted that Plaintiff reported some aching and stiffness but was again gradually improving, although fatigue was still a problem. *Id.* Further improvement was indicated in the

August 3, 2000, progress note, with mild arthralgias and stiffness reported with activity and  no active synovitis noted on examination. Tr. 164.  Later that year, on October 31, 2000, Dr. Yost noted that Plaintiff was doing "very well" with regard to her arthritis, although he noted that Plaintiff fatigues easily and that activity would induce swelling.  Tr. 157.  He noted that Plaintiff was stable overall, with trace swelling at the MCPs and wrists, although  significantly improved.  *Id.*  On March 2, 2001, Dr. Yost indicated in his progress notes that Plaintiff had some synovitis in the upper extremities and some tenderness in the lower extremities.  Tr. 143-44.  He opined that Plaintiff remained "100% disabled." *Id.*  Dr. Yost indicated on October 2, 2001, that Plaintiff continued to do fairly well, with some pain at the MCPs and knees, fatigued easily, and was resting poorly.  Tr. 134.  He also indicated normal range of movement and strength and no joint enlargement in the lower extremities and upper left extremity, with some minimal tenderness in the right upper extremity.  *Id.*

A progress note dated July 10, 2002, reports that Plaintiff "remains on high dose methotrexate" and other medications.  Tr. 305.  Dr. Yost indicated that "[e]ven on her current therapy, she continues to have moderate fatigue, morning stiffness, and gelling.  She still notes pain and swelling in her hands and wrists even with minimal activity." *Id.*  Dr. Yost noted that "[a]ny effort produces an exacerbation of her disease, any semblance of normalacy [sic] is achieved only with extremely high doses of medication." Tr. 307.  Dr. Yost completed a physical RFC assessment form dated July 11, 2002, which indicated that Plaintiff's experience of pain or other symptoms were severe enough to interfere with attention and concentration constantly.  Tr. 317.  He indicated that Plaintiff should only occasionally lift 5-10 pounds and should not frequently lift any weight.  Tr. 318. He indicated that Plaintiff's impairments limited her reaching and feeling moderately; and her fingering, pushing/pulling, and handling severely.  *Id.*  He also indicated that during an 8-hour workday, Plaintiff could stand or walk only 10-15 minutes total and could stand or walk only 5-10

minutes continuously.  *Id.*  Dr. Yost opined that Plaintiff could only sit 10-20 minutes total in an

8-hour workday and could only sit 5-10 minutes continuously.  Tr. 319.  He noted that Plaintiff has

"severe back pain when sitting for any period of time" and indicated that she must use a pillow for

back support.  *Id.*  He opined that Plaintiff should never climb, stoop, crouch, kneel, or crawl and

should only occasionally balance.  *Id.*  He indicated that Plaintiff should elevate her legs 80-90%

of the time in an 8-hour workday, should she engage in prolonged sitting.  *Id.*  Dr. Yost noted that

"any significant consistent level of activity will exacerbate [Plaintiff's] disease" and that even with

medical therapy, her rheumatoid arthritis remained significant.  Tr. 320.  He also noted that Plaintiff

had "profound fatigue" and opined that such fatigue also limited any sustained activity.  *Id.*

The record demonstrates that the ALJ correctly noted that Dr. Yost repeatedly opined that

Plaintiff was disabled, a non-medical opinion on an issue reserved to the Commissioner. The ALJ,

therefore, did not err by failing to give controlling weigh to such opinions.  Plaintiff alleges that the

ALJ failed to consider all the record evidence and instead determined to "pick and choose" only the

evidence which supported his position.  *See Loza*, 219 F.3d at 393.  Plaintiff alleges that the ALJ

improperly rejected the opinion of Dr. Yost, Plaintiff's treating rheumatologist, that Plaintiff cannot

do repetitive activities with her hands and fingers.  Pl. Brief at 21.

In his opinion the ALJ indicated that he had not given "controlling or even significant weight

to [Dr. Yost's]  opinions," because such opinions were "unsupported by and inconsistent with the

medical records, including his own treatment notes and the examination findings and treatment

records of the other treating and examining physicians." Tr. 440-41.  The ALJ opined that Dr. Yost

"clearly has become an advocate for his patients" and indicated that he had learned to look carefully

at Dr. Yost's opinions and did so in this case.  Tr. 441.

The ALJ noted that Dr. Yost had opined that repetitive use of Plaintiff's hands, wrists, and feet precipitated exacerbation of her authority and later opined that joint movement of any type exacerbated her condition. *Id*. He noted that Dr. Yost completed an RFC questionnaire in July 2002 in which he indicated that Plaintiff was extremely limited in her ability to sit, stand, walk, and perform other physical activities. *Id*. The ALJ noted that Dr. Yost completed another questionnaire in October 2002, again indicating that Plaintiff was extremely limited. Tr. 441-42. The ALJ noted that a functional capacity questionnaire completed in October 2003 indicated that Plaintiff could not lift or carry any weight, could occasionally have interpersonal relationships, and could never handle any stressful situations. Tr. 442.

The ALJ indicated that Dr. Yost's opinions, particularly as expressed in his letters and questionnaires, are not supported by the overall record, including his treatment notes, and are inconsistent with the overall evidence, including his treatment notes and the opinions and examinations of Plaintiff's other treating physicians. *Id*. The ALJ specifically noted:

> [a]lthough I agree that Ms. Munoz's impairments limited her regarding the repetitive use of her hands for fine manipulation, after reviewing all of the evidence again, I still find Dr. Yost's other suggested limitations are ridiculous and entirely inconsistent with the evidence . . . .

Tr. 442.

The ALJ noted that Dr. Yost's treatment records indicate that Plaintiff's gait and station were steady and that she had normal ability. The ALJ opined that "[t]he fact that Ms. Munoz frequently exhibited normal mobility of her neck, back and trunk, with no tenderness, also avers against her having significant postural limitations." Tr. 443. The ALJ opined that although Plaintiff may have had some pain in these areas, her pain was not so severe that it manifested actual limitations to the range of motion of her neck, back, or trunk. *Id*. The ALJ also opined that treatment records did not indicate that Plaintiff took a massive amount of medications, although Dr. Yost had indicated that

Plaintiff's disease was held in check only minimally by massive amounts of medication. *Id.*

The ALJ cited to specific notations in Dr. Yost's treatment records, indicating that Plaintiff was doing well, did not have any joint discomfort, that her rheumatoid arthritis was under good control, that she experienced mild arthralgias rather than marked pain, that she had trace swelling, and that she had significantly improved. Tr. 444. The ALJ opined that these are not "isolated references" in Dr. Yost's treatment notes. Rather, he opined that such treatment notes consistently show Plaintiff's overall condition and functioning were relatively normal. *Id.*

The ALJ pointed to the observations of Dr. Pascual Mendoza indicating intact strength and sensation of the upper extremities and mild osteoarthritic changes. Tr. 445. The ALJ also pointed to the notes of Plaintiff's psychologist indicating a moderate degree of pain and Shannon Clinic notes from 2003 indicating physical examinations that were unremarkable. *Id.*

The ALJ rejected the limitations noted by Dr. Yost in July 2002 regarding Plaintiff's ability to sit, stand, and walk and the October 2002 opinion indicating that Plaintiff could sit and walk one or two hours during an 8-hour workday but was unable to stand, bend, stoop, or perform similar activities for any significant amount of time. Tr. 442-43. The ALJ indicated that he gave great weight to the determinations of the non-examining state agency physicians, who had opined that Plaintiff could sit about six hours during an 8-hour workday, stand and walk for about six hours during an 8-hour workday, could lift 10 pounds frequently and 20 pounds occasionally, could perform unlimited pushing and pulling, and could frequently perform postural activities except that she should never climb ladders, scaffolds, or ropes. Tr. 445.

Plaintiff notes that Dr. Yost opined that Plaintiff cannot perform repetitive activities with her fingers. The ALJ interpreted Dr. Yost's medical evidence in comparing the limitations contained

in Dr. Yost's opinions with the medical evidence of record, picking and choosing only the evidence that supported his decision.

The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse*, 925 F.2d at 790 (citing *Bradley*, 809 F.2d at 1057).  The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523.  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  However, in weighing the evidence, the ALJ is not free to reject the uncontroverted opinions of a treating physician regarding the limitations imposed by Plaintiff's impairments solely because he has a different interpretation of the evidence.  *See Frank*, 326 F.3d at 622 (where the Fifth Circuit noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments).

In his opinion the ALJ characterized Dr. Yost's opinions regarding the limitations imposed by Plaintiff's impairments as "ridiculous and entirely inconsistent with the evidence, including his own treatment notes."  Tr. 442.  The ALJ was not required to give any special weight to Dr. Yost's opinions indicating that Plaintiff was disabled.  However, the ALJ gave Dr. Yost's opinions regarding the limitations imposed by Plaintiff's impairments very little weight, indicating that they were inconsistent with the evidence of record, including his own treatment notes.  The ALJ also rejected the opinion of Dr. Dan Stultz, who took over Plaintiff's care after Dr. Yost.  Tr. 445.  The

ALJ indicated the Dr. Stultz's statement that Plaintiff's rheumatoid arthritis was not in remission and that she had a very low tolerance for exercise due to pain and fatigue, "seem[ed] to echo Ms. Munoz's subjective complaints and are not supported by the treatment records in 2005 and 2006." Tr. 446.

The ALJ also rejected the opinions of Plaintiff's mental health treatment providers and Dr. Yost, because such opinions were indicated in mental RFC assessment questionnaires.  Tr. 449. Both Plaintiff's treating psychiatrist and psychologist opined that Plaintiff could not  concentrate for extended periods while doing simple, unskilled activities. Tr. 450. Dr. Jim Berkshire completed a Mental Residual Functional Capacity Assessment form on May 3, 2002. Tr. 298-301.  He indicated on the form that Plaintiff was markedly limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 299-300.  In a Mental Residual Functional Capacity Assessment form completed on May 9, 2002, Dr. Kaycia Vansickle indicated that Plaintiff was markedly limited in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms,  to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting.  Tr. 268-69.  She also indicated that Plaintiff was extremely limited in the ability to be aware of normal hazards and take appropriate precautions. Tr. 269. The consultative psychological examiner, Dr. W. Truett Smith, noted that Plaintiff reported her inability to concentrate and opined that Plaintiff was severely depressed, with her depression "to

the point [that] it is significantly interfering with her ability to function." Tr. 99, 103. Dr. Smith indicated that at the time of the examination, her depression was "such that total recovery is unlikely." Tr. 103.

The ALJ specifically disagreed with the opinions of Dr. Vansickle and Dr. Berkshire that Plaintiff experienced serious or marked concentration deficits, and that she was markedly limited in her ability to understand, remember, and carry out detailed instructions, concentrate for extended periods of time, and complete a normal workday without interruptions. Tr. 450. Despite the numerous limitations noted by Dr. Vansickle and Dr. Berkshire, the ALJ found that Plaintiff was limited to performing jobs with a reasoning development level of 1-3 as defined in the *Dictionary of Occupational Titles*.

The ALJ also declined to accept Dr. Yost's opinion regarding Plaintiff's Mental Residual Functional Capacity Assessment, where Dr. Yost opined that Plaintiff was markedly or extremely limited in most areas, noting that Dr. Yost does not specialize in mental disorders or psychiatric treatment. Tr. 311-13, 449.

The ALJ found that Plaintiff has only moderate difficulties in maintaining concentration, persistence, or pace. Tr. 441. In making his RFC assessment, the ALJ did not incorporate the physical limitations noted by Dr. Yost, a specialist in rheumatology, and did not incorporate marked limitation on concentration, persistence, or pace noted by both Dr. Berkshire and Dr. Vansickle, Plaintiff's psychological and psychiatric treatment providers. Even the psychological consultative examiner, Dr. Smith, noted Plaintiff's difficulty in completing the exercise demonstrating concentration (serial subtraction of sevens). He noted that the exercise required much prompting, Plaintiff tried to quit several times, and although she said that she couldn't do it, she "exerted a mighty effort to complete the task, and was slow." Tr. 101. The ALJ primarily relied upon the

opinions of the non-examining physicians in determining Plaintiff's physical limitations and in declining to accept the non-exertional limitations noted by her mental treatment providers. The ALJ discounted the medical opinions and observations of Plaintiff's treating physicians, including specialists in rheumatology, psychology, and psychiatry, in determining the limitations imposed by Plaintiff's physical and mental impairments. Similarly, he rejected Plaintiff's own testimony and reports of the limitations imposed by such impairments. He failed to consider all of the effects of Plaintiff's impairments as reflected by substantial evidence in the record and appears to have picked and chosen only the evidence in the record that supported his position. *See Loza*, 219 F.3d at 393 (internal citations omitted). In addition, the ALJ's opinion indicates that he repeatedly evaluated raw medical data in the evidence of record and relied in part upon his own opinions to determine the significance or consistency of such records with the opinions of the treating and examining physicians and psychologist. Having failed to appropriately consider the limitations imposed by Plaintiff's impairments and having failed to appropriately consider the opinions of Plaintiff's treating and examining physicians and psychologists regarding such limitations, this court finds that the ALJ's RFC finding is not supported by substantial evidence.

This case has twice been remanded by the United States district court. Upon remand the ALJ should further consider the opinions and weight accorded to the treating and examining physicians and psychologists regarding the limitations imposed by all of Plaintiff's impairments.

The court notes Plaintiff's argument that the ALJ erred by failing to appropriately consider the entire insured period in making his decision. The ALJ's opinion clearly indicates that Plaintiff's date last insured was December 31, 2005, whereas the correct date was December 31, 2006. However, the ALJ's opinion references evidence subsequent to December 31, 2005, and the court

has considered that evidence in this case. Tr. 433.  Therefore, the court finds that any such error was

not prejudicial.

Plaintiff also argues that the ALJ erred by failing to appropriately consider Plaintiff's

testimony regarding the limitations imposed by her impairments, has erred by relying upon the

testimony of the VE at step 5 of the sequential evaluation process where such testimony was based

on a hypothetical question that did not include all of the limitations imposed by Plaintiff's

impairments, and has erred by failing to appropriately consider the *Dictionary of Occupational Titles*

in conflict with the testimony.  Having found that the ALJ erred at step 3 in making the RFC

assessment, this court does not reach Plaintiff's additional claims of error.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court

recommends that the United States district judge reverse the Commissioner's decision and remand

this case for further proceedings in accordance with this recommendation.

Plaintiff having refused consent to having the United States magistrate judge conduct all

further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United

States district judge.

A copy of this report and recommendation shall be served on all parties in the manner

provided by law.  Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy.  In order to be specific,

an objection must identify the specific finding or recommendation to which objection is made, state

the basis for the objection, and specify the place in the magistrate judge's report and

recommendation where the disputed determination is found.  An objection that merely incorporates

by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file

-19-

specific written objections will bar the aggrieved party from appealing the factual findings and legal

conclusions of the magistrate judge that are accepted or adopted by the district court, except upon

grounds of plain error.

DATED this 22nd day of February, 2010.


**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**